NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-1724
_____

In re:  SEMCRUDE L.P., et al.,
                                        Debtors


Manchester Securities Corp., et al.,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-09-cv-00935)
District Judge:  Honorable Leonard P. Stark
_____

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2011

Before: SLOVITER, VANASKIE, *Circuit Judges*
and STENGEL,* *District Judge*

(Filed: January 3, 2012)
_____

OPINION
_____

_____

    * Hon. Lawrence F. Stengel, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

SLOVITER, *Circuit Judge.*

Manchester Securities Corp. ("Manchester") appeals from the judgment of the District Court dismissing its bankruptcy appeal as equitably moot. We will affirm.[1]

**I.**

Because we write primarily for the parties, who are aware of the relevant facts, we discuss them only briefly.

Manchester is the largest creditor of SemGroup Holdings, L.P. ("Holdings"), which filed a voluntary petition for bankruptcy under Chapter 11 in October 2008. Manchester contends that Holdings is owed $50 million by SemCrude Pipeline, L.L.C. ("Pipeline"), an affiliated company that was part of a separately administered Chapter 11 proceeding. Pipeline's bankruptcy proceeding involved a number of related companies (collectively "Debtors"), and was resolved through a confirmed plan of reorganization (the "Plan"). Manchester objected to the confirmation of the Plan on the ground that it did not provide for the payment of Pipeline's purported $50 million dollar debt to Holdings. The Bankruptcy Court overruled this objection, finding that the alleged obligation was illusory and solely the result of a computerized accounting error. Manchester subsequently moved orally for a stay, which the Bankruptcy Court denied without prejudice to Manchester's right to make a written motion for a stay on a full record. Manchester did not make any further request for a stay.

---

[1] The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291.

On November 30, 2009, the Plan became effective and was substantially consummated through various transactions by which the Debtors became the "Reorganized Debtors." Subsequently, Manchester filed a timely appeal to the District Court, challenging the Bankruptcy Court's approval of the Plan and asserting that Holdings had either an administrative priority claim or a general unsecured claim for $50 million against Pipeline. The District Court dismissed Manchester's appeal as equitably moot. Manchester timely appealed.

## II.

The doctrine of equitable mootness provides that an appeal should be "dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Cont'l Airlines*, 91 F.3d 553, 559 (3d Cir. 1996) (en banc) ("*Continental I*"). We have emphasized that this doctrine should be "limited in scope and cautiously applied." *Id.* In deciding whether equitable mootness should bar an appeal in a particular case, we consider:

> (1) whether the reorganization plan has been substantially consummated,
> (2) whether a stay has been obtained, (3) whether the relief requested would
> affect the rights of parties not before the court, (4) whether the relief
> requested would affect the success of the plan, and (5) the public policy of
> affording finality to bankruptcy judgments.

*Id.* at 560. "These factors are given varying weight, depending on the particular circumstances, but the foremost consideration is whether the reorganization plan has been substantially consummated," especially "'where the reorganization involves intricate transactions . . . or where outside investors have relied on the confirmation of the plan.'" *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000) (quoting *Continental I*, 91 F.3d at 560-61).

3

Because application of equitable mootness involves a discretionary balancing of equitable and prudential factors, we review its application for abuse of discretion. *Continental I*, 91 F.3d at 560. Where legal or factual issues are interspersed with prudential ones, the court applies plenary review for legal issues and clear error review for factual issues. *Id.* "We accept the lower court's findings of fact unless they are completely devoid of a credible evidentiary basis or bear no rational relationship to the supporting data." *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 182 (3d Cir. 2001) (internal quotation marks omitted).

### III.

The District Court found that all five factors weigh in favor of equitable mootness. We agree.

First, the Plan has been substantially consummated. The Bankruptcy Code defines substantial consummation as: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). In this case those requirements are clearly satisfied. As provided for by the Plan, the Debtors transferred assets to newly incorporated entities, issued new stock and warrants, entered into loan agreements and credit facilities, and distributed hundreds of millions of dollars to their pre-petition creditors.

Nevertheless, Manchester argues that the Plan has not been substantially consummated for equitable mootness purposes. Manchester cites to cases suggesting that a plan is only substantially consummated for equitable mootness purposes if a successful appeal would

4

"undermine the [p]lan's foundation," *United Artists Theater Co. v. Walton*, 315 F.3d 217, 228 (3d Cir. 2003), or "necessitate the reversal or unraveling of the entire plan of reorganization," *In re PWS Holding Corp.*, 228 F.3d at 236. Those cases do not alter the outcome here because granting Manchester the relief it seeks would in fact undermine the Plan's foundation. As the District Court found, the $50 million dollar claim pressed by Manchester represents 100% of the cash Reorganized Debtors were permitted to keep after bankruptcy and, in light of the Bankruptcy Court's denial of Manchester's objection and approval of the Plan, Reorganized Debtors did not set aside any funds to cover such a claim. Moreover, given the size of the claim, the District Court did not clearly err in its finding that payment of the claim would require the modification of the Plan and entail increased risks not bargained for by the creditors of the Reorganized Debtors.[2]

Thus, the Plan was substantially consummated, first, because of the various transactions completed after Plan approval and, second, because Manchester's appeal threatens to undermine the Plan's foundation by causing a significant change in the financial health of the Reorganized Debtors that was not foreseen when the Plan was approved.[3] Because the reorganization

---

[2] Manchester argues that equitable mootness should not apply because the claim could be paid as an administrative expense without requiring amendment of the Plan. We rejected that argument in *Continental I*. 91 F.3d at 566 (holding that a plan's provision of a mechanism by which a reorganized debtor can pay an administrative claim does not mean that equitable mootness does not apply).

[3] Manchester argues additionally that the District Court erred by failing to consider intermediate options that would not require the unraveling of the entire plan. Manchester, which knew at the time of the confirmation hearing the size of its claim and its obvious potential impact on the reorganization, failed to diligently pursue a stay. Where a party asserts a claim against a reorganized debtor, courts are not obligated to fashion an intermediate remedy where that party failed to obtain a stay and the other

involved intricate transactions, this factor is entitled to significant weight. *See In re PWS Holding Corp.*, 228 F.3d at 236.

The other factors also counsel in favor of applying equitable mootness. First, Manchester did not obtain a stay. After the Bankruptcy Court denied its initial oral motion, Manchester failed to file a written motion for a stay even though the Bankruptcy Court invited it to do so. Manchester argues that this failure should be excused in light of the fact that it might have been required to post a large bond in order to stay the confirmation order. This argument is undercut by the fact that Manchester does not assert that it made any effort to ascertain the amount of bond it would have been required to post. "[I]t 'is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief . . .), if the failure to do so creates a situation rending it inequitable to reverse the orders appealed from.'" *Nordhoff Invs., Inc.*, 258 F.3d at 186-87 (quoting *In re Highway Truck Drivers & Helpers Local Union #107*, 888 F.2d 293, 297 (3d Cir. 1989)).

Similarly, in light of the finding that permitting Manchester's claim would threaten the financial health of Reorganized Debtors and undercut the Plan, we find no error in the District Court's further finding that permitting Manchester's appeal would affect the rights of parties not before the court. First, various financial institutions have issued lines of credit to the Reorganized Debtors. The record reveals that the projected balance sheets of the Reorganized

prudential factors lean in favor of equitable mootness. *Continental I*, 91 F.3d at 567 (finding no "prudential considerations that . . . support an attempt by an appellate court, district or court of appeals, to fashion even a limited remedy for [appellant].") Thus, the District Court did not err in failing to fashion an intermediate remedy.

6

Debtors used in the negotiation and approval of the Plan do not account for the $50 million Holdings claim. In light of this fact and the size of the claim asserted by Manchester, we can only conclude that the parties to the Plan, including those who continued as creditors to the Reorganized Debtors, relied on the Bankruptcy Court's rejection of the Holdings claim as part of their approval of the Plan and their willingness to lend to the Reorganized Debtors. Second, the Reorganized Debtors have entered into various executory contracts and leases in which the interests of their counterparties could be harmed by damage to the Reorganized Debtors' financial health. Finally, the stock and warrants issued as part of the consummation of the plan have been freely tradable since their issuance, and the rights of persons holding these instruments would be affected by Manchester's appeal. In sum, because we cannot conclude that the District Court's finding that the relief requested would affect the rights of third parties is "completely devoid of a credible evidentiary basis," we will uphold it. *Nordhoff Invs., Inc.*, 258 F.3d at 182.

We have already noted, *supra*, our approval of the District Court's finding that the fourth factor is also satisfied because the relief requested by Manchester would affect the success of the plan.

Finally, in light of the heightened risks to the Reorganized Debtors' financial health engendered by Manchester's appeal, the District Court found that the public policy of affording finality to bankruptcy judgments weighs in favor of dismissing the appeal. We agree. As we noted in *Continental I,* "[o]ur inquiry should not be about the 'reasonableness' of the Investors' reliance or the probability of either party succeeding on appeal. Rather, we should ask whether we want to encourage or discourage reliance by investors and others on the finality of

7

bankruptcy confirmation orders. The strong public policy in favor of maximizing debtors'

estates and facilitating successful reorganization, reflected in the Code itself, clearly weighs in

favor of encouraging such reliance." 91 F.3d at 565.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.